Hope Anne Case (State Bar No. 157089)
hcase@rutan.com
RUTAN & TUCKER, LLP
Five Palo Alto Square
3000 El Camino Real, Suite 200
Palo Alto, CA 94306-9814
Telephone:  650-320-1500
Facsimile:   650-320-9905

Kenneth J. Zielinski (State Bar No. 258555)
kzielinski@rutan.com
K. Bartlett Jordan (State Bar No. 329893)
bjordan@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road. 9th Floor
Irvine, CA  92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
AERA ENERGY SERVICES COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RADFORD, an individual and on behalf of all others similarly situated: <br><br> Plaintiff, <br><br> vs. <br><br> AERA ENERGY SERVICES COMPANY, a Delaware corporation, and DOES 1 through 50, <br><br> Defendants. | Case No. <br><br> [State Case No. BCV-24-101317] <br><br> **NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AERA ENERGY SERVICES COMPANY** <br><br> [Concurrently filed with Civil Cover Sheet; Corporate Disclosure Statement; and Declarations of K. Bartlett Jordan and Laurie La Frenz] |

**TABLE OF CONTENTS**

Page(s)

I. PROCEDURAL REQUIREMENTS & HISTORY ..............................................................5

II. FEDERAL QUESTION JURISDICTION ........................................................................6

    A. Legal Authority for Removal and Plaintiff's Claims ...............................................6

    B. Aera's Unionized Workforce and the Collective Bargaining Agreements .............8

    C. Plaintiff's Claims Are Preempted By The LMRA .................................................10

        1. Plaintiff's Minimum Wage Claim Is an Artfully Plead Overtime Claim which Is Preempted Because It Arises Solely from the CBAs ............................. 10

        2. Alternately, Plaintiff's Minimum Wage Claim Is Preempted Because It Requires Interpretation of the CBAs ................................................................ 14

        3. Plaintiff's Rest Period Claim Is Preempted Because It Requires Interpretation of the CBAs and the Documents Incorporated by Reference......... 15

        4. Plaintiff's Wage Statement, Waiting Time, Unfair Competition, and PAGA Claims Are Preempted Because they Are Derivative of the Other Claims 16

        5. Plaintiff's Timely Wage Payment Claim Is Preempted Because It Arises Solely from the CBAs ................................................................................... 17

III. AERA'S REMOVAL IS TIMELY ...............................................................................18

IV. VENUE ........................................................................................................................18

V. DEFENSES ...................................................................................................................18

VI. CONCLUSION ............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) ............................................................................. 9, 10

*Alaska Airlines, Inc. v. Schurke*,
  898 F.3d 904 (9th Cir. 2018) ....................................................................................... 7

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ........................................................................................... 6, 7, 14

*Bartlett v. All Am. Asphalt*,
  2020 WL 6118818 (C.D. Cal. Oct. 16, 2020) ............................................................. 17

*Cavallaro v. UMass Mem. Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012) ........................................................................................... 15

*Curtis v. Irwin Industries, Inc.*,
  913 F.3d 1146 (9th Cir. 2019) ........................................................... 6, 7, 12, 13, 16, 17

*Davis v. Northeast Ctr. for Youth & Families, Inc.*,
  662 F. Supp. 3d 151 (D. Mass. 2023) ......................................................................... 14

*Emrich v. Touche Ross & Co.*,
  846 F.2d 1190 (9th Cir. 1988) .................................................................................... 18

*Gray v. Marathon Petroleum Logistics Servs., LLC*,
  2021 WL 129144 (C.D. Cal. Jan. 12, 2021) ............................................................... 13

*Hall v. Live Nation Worldwide, Inc.*,
  146 F. Supp. 3d 1187 (C.D. Cal. 2015) ................................................................ 16, 17

*Hyles v. Mensing*,
  849 F.2d 1213 (9th Cir. 1988) ...................................................................................... 7

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
  832 F.3d 1024 (9th Cir. 2016) ............................................................................... 7, 14

*Landy v. Pettigrew Crewing, Inc.*,
  2019 WL 6245525 (C.D. Cal. Nov. 22, 2019) ............................................................ 17

*Martinez v. Omni Hotels Mgmt. Corp.*,
  2021 WL 196509 (S.D. Cal. Jan. 20, 2021) ................................................................ 16

*Mendiola v. CPS Security Solutions, Inc.*,
  60 Cal.4th 833 (2015) ................................................................................................. 14

*Olguin v. Inspiration Consol Copper Co.*,
   740 F.2d 1468 (9th Cir. 1984) ............................................................................. 8

*Paige v. Henry J. Kaiser Co.*,
   826 F.2d 857 (9th Cir.1987) ............................................................................ 7, 14

*Radcliff v. San Diego Gas & Elec. Co.*,
   519 F. Supp. 3d 743 (S.D. Cal. 2021) ........................................... 7, 11, 14, 16, 17

*Sanders v. Old Dominion Freight Line, Inc.*,
   2018 U.S. Dist. LEXIS 226355, No. EDCV 18-688 DSF ...................................... 16

*Travis Taylor v. NBC W., LLC*,
   2020 WL 8268197 (C.D. Cal. Jan. 2, 2020) ........................................................... 13

*Vranish v. Exxon Mobil Corp.*,
   223 Cal. App. 4th 103 (2014) ................................................................................. 12

*Wylie v. Foss Maritime Co.*,
   2008 WL 4104304 (N.D. Cal. Sept. 4, 2008) ......................................................... 12

*Young v. Anthony's Fish Grotto, Inc.*,
   830 F. 2d 993 (9th Cir. 1987) ..................................................................... 7, 10, 11

**Statutes**

28 U.S.C. § 1331 ............................................................................................................. 5, 6, 18

28 U.S.C. § 1367 ................................................................................................................. 8, 18

28 U.S.C. § 1441 ............................................................................................................. 5, 8, 18

28 U.S.C. § 1446 ................................................................................................................. 5, 18

29 U.S.C. § 141 et seq. ............................................................................................................. 7

29 U.S.C. § 152 ..................................................................................................................... 8, 9

29 U.S.C. § 185 ..................................................................................................................... 6, 8

California Labor Code § 204 .................................................................................................. 17

California Labor Code § 514 ............................................................................................ 12, 13

**Other Authorities**

8 Cal. Code. Reg. § 11160(3)(H)(1) ...................................................................................... 13

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS:**

PLEASE TAKE NOTICE that Defendant Aera Energy Services Company ("Aera") removes the above-captioned action from the Superior Court of the State of California, County of Kern, to the United States District Court for the Eastern District of California. This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and which may be removed to this Court by Aera on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(a) as explained below.

I.   **PROCEDURAL REQUIREMENTS & HISTORY**

1. Pursuant to 28 U.S.C. § 1446(a), to the best of Aera's knowledge, copies of all process, pleadings, orders, and other papers and exhibits of every kind served upon or available to Aera are summarized below and are attached to the concurrently filed Declaration of K. Bartlett Jordan as Exhibits 1–11.[1]

2. On April 16, 2024, Plaintiff Christopher Radford ("Plaintiff") submitted a notice to California's Labor and Workforce Development Agency alleging various violations of California's Private Attorneys General Act of 2004 ("PAGA"), California Labor Code section 2698 et seq. (Ex. 1.)

3. On April 16, 2024, Plaintiff filed a civil class action complaint against Aera ("Complaint") in the Kern County Superior Court styled *Christopher Radford, an individual and on behalf of all others similarly situated v. Aera Energy Services Company, a Delaware Corporation and DOES 1 through 5*, No. BCV-24-101317 ("State Court Action"). (Ex. 2.)

4. On April 16, 2024, Plaintiff filed a Civil Cover Sheet, which Plaintiff served on Aera by personal service on July 10, 2024. (Ex. 3.)

5. On April 18, 2024, the Kern County Superior Court ("Superior Court") issued an Electronic Rejection Notice (Summons does not conform exactly to the Complaint). (Ex. 4.)

6. On April 18, 2024, the Superior Court issued a Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause re CRC Rule 3.110 and Notice of Case

---

[1]   Exhibits 12–14 are attached to the concurrently filed Declaration of L. La Frenz.

Management Conference, which Plaintiff served on Aera by personal service on July 10, 2024. (Ex. 5.)

7. On April 18, 2024, the Superior Court issued a Summons to personally serve the Complaint, which Plaintiff served on Aera by personal service on July 10, 2024.  (Ex. 6.)

8. On July 8, 2024, Plaintiff filed a FAC alleging class and representative claims against Aera, which Plaintiff served on Aera by personal service on July 10, 2024.  (Ex. 7.)

9. On July 10, 2024, the Summons and FAC were personally served on Aera's agent for service of process.  (Ex. 8.)

10. The Superior Court attached the Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause re CRC Rule 3.110 and Notice of Case Management Conference which it issued on April 18, 2024, to the docket entry dated August 1, 2024.  (Ex. 9.)

11. On August 6, 2024, Aera filed an Answer.  (Ex. 11.)

12. The Superior Court attached the Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause re CRC Rule 3.110 and Notice of Case Management Conference which it issued on April 18, 2024, to the docket entry dated October 15, 2024.  (Ex. 11.)

13. The current docket in the State Court Action is attached to the concurrently filed Declaration of K. Bartlett Jordan as Exhibit 12.

## II.     FEDERAL QUESTION JURISDICTION

### A.     Legal Authority for Removal and Plaintiff's Claims

14. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, as it arises under federal law.  Under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, the district courts of the United States have original jurisdiction over any action brought for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce.  As the Ninth Circuit has explained, "any suit 'alleging a violation of a provision of a labor contract ***must*** be brought under § 301 and be resolved by reference to federal law.'" *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1151–52 (9th Cir. 2019) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)) (emphasis added).

15. The Ninth Circuit applies a two-step test to determine whether LMRA preemption applies. *Curtis*, 913 F.3d at 1152. First, the court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA'"; if the answer is yes, "then the claim is preempted, and [the] analysis ends there." *Id.* at 1152–53. If the answer is no, then the court asks whether resolving the cause of action will involve interpreting " the scope, meaning, or application of the CBA"; if so, then LMRA preemption applies and there is federal jurisdiction over the claim. *Id.* at 1153.

16. As detailed below, this action is preempted by the LMRA, 29 U.S.C. § 141 et seq., because the claims at issue either (i) exist solely because of the collective bargaining agreements, or (ii) cannot be resolved without analyzing the collective bargaining agreements that govern the terms and conditions of Plaintiff's and the other allegedly aggrieved employees' employment with Aera. *See Leuck*, 471 U.S. at 220; *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032–33 (9th Cir. 2016) (noting that LMRA section 301 completely preempts state law claims when those claims are "founded directly on rights created by collective-bargaining agreements" or are "substantially dependent on analysis of a collective bargaining agreement.").

17. "To determine whether a claim is preempted under the LMRA, courts look to the underlying character of the claim itself." *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 748 (S.D. Cal. 2021) (citing *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). "Plaintiffs may not avoid removal by 'artfully pleading' their claims to omit references to preemptive federal law." *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988) (quoting *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 860 (9th Cir.1987); *see also Radcliff*, 519 F. Supp. 3d at 748 (collecting cases holding that plaintiffs may not avoid LMRA preemption by artfully pleading PAGA claims while omitting the underlying Labor Code claims). "Even if the plaintiff's complaint does not refer to federal law, the case may be removed if federal law preempts completely the state law on which it relies and 'supplants' the state claim with a federal claim." *Hyles*, 849 F.2d at 1215 (quoting *Young*, 830 F.2d at 996–97). This is appropriate, since "employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions

of the collective bargaining agreement." *Olguin v. Inspiration Consol Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984), *overruled on other grounds by Lueck*, 471 U.S. 202.

18. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's remaining state-law claims, if any, because they are part of the same case and controversy. This action may therefore be removed by Aera pursuant to 28 U.S.C. §§ 1441(a) and (c).

19. On April 16, 2024, Plaintiff filed his Complaint alleging the following class claims against Aera: (1) Minimum Wage Violations (Labor Code §§ 1182.12, 1194, 1194.2, 1197); (2) Overtime Wage Violations (Labor Code §§ 204, 510, 1194, 1198); (3) Meal Period Violations (Labor Code §§ 226.7, 512, 558); (4) Rest Period Violations (Labor Code §§ 226.7, 516, 558); (5) Wage Statement Penalties (Labor Code § 226); (6) Waiting Time Penalties (Labor Code §§ 201-203); and (7) Unfair Competition (Bus. & Prof. Code §§ 17200, et seq.). (Ex. 2.) Plaintiff did not serve this Complaint on Area. (Jordan Decl., ¶ 3.)

20. On July 8, 2024, Plaintiff filed a First Amended Complaint ("FAC") against Aera alleging the following class and representative claims: (1) Minimum Wage Violations (Labor Code §§ 1182.12, 1194, 1194.2, 1197); (2) Rest Period Violations (Labor Code §§ 226.7, 516, 558); (3) Wage Statement Penalties (Labor Code § 226); (4) Waiting Time Penalties (Labor Code §§ 201-203); (5) Unfair Competition (Bus. & Prof. Code §§ 17200, et seq.); and (6) Civil Penalties under the California Private Attorneys General Act (Labor Code §§ 2698 et seq.). (Ex. 7.) Plaintiff served the FAC, the operative complaint, on Aera on July 10, 2024. (Ex. 8.)

**B.   Aera's Unionized Workforce and the Collective Bargaining Agreements**

21. Aera provides personnel services for management, operations, technical, administrative, and support staff to Aera Energy, LLC pursuant to a service agreement between the two entities. (La Frenz Decl., ¶ 2.) Aera Energy, LLC, in turn, is a gas corporation which is in the business of exploring for, gathering, processing, producing, and selling natural gas and other hydrocarbons and minerals. (*Id.*)

22. Aera is an "employer whose activities affect commerce" and employs "employees in an industry affecting commerce," *id.* at ¶ 2, and thus is an employer within the meaning of the LMRA. 29 U.S.C. § 185(a)–(b); *see also* 29 U.S.C. § 152(2).

23. Plaintiff is a former Aera employee and was a United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers' International Union ("USW") member while employed by Aera. (*Id.* at ¶ 4.) As such, Plaintiff is an "employee" within the meaning of the LMRA. 29 U.S.C. § 152(4).

24. Approximately 75% of Aera's non-exempt California workforce is unionized. (*Id.* at ¶ 5.) During the relevant period, Aera's union employees were members of the USW or WCEU [West Coast Employee Union]/USW Local 407. (*Id.*) USW and WCEU are each a "labor organization" within the meaning of the LMRA because employees participate in each organization and each "exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

25. During the relevant period (*i.e.*, April 16, 2020, to the present), the relationship between Aera and its unionized employees was governed by three different collective bargaining agreements ("CBAs"), true and correct copies of which are attached to the Declaration of Laurie La Frenz as Exhibits 13–15, as follows:

    A. The Articles of Agreement between WCEU/USW Local 407 and Aera Energy Services Company that were in effect from May 16, 2015, until, and including, January 31, 2022 (the "2015 CBA") (Ex. 13);

    B. The Articles of Agreement between Aera Energy Services Company and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers' International Union that were in effect from February 1, 2019, until, and including, January 31, 2022 (the "2019 CBA") (Ex. 14); and

    C. The Articles of Agreement between WCEU/USW Local 407, USW Local 219, USW Local 12-6 and Aera Energy Services Company that are in effect from February 1, 2022, until, and including, January 31, 2026 (the "2022 CBA"). (Ex. 15.)

26. Each of these CBAs is a "contract" between an "employer" and a "labor union" within the meaning of section 301 because they are the exclusive contracts governing the terms and conditions of the union employees' employment with Aera. *See, e.g., Aguilera v. Pirelli Armstrong*

*Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (noting that when a plaintiff is "part of the bargaining unit whose positions [are] covered by [a] CBA" that CBA preempts any separate contract between the plaintiff and employer); *Young v. Anthony's Fish Grotto, Inc.*, 830 F. 2d 993, 997–98 (9th Cir. 1987) (same).  As a matter of federal law, at all times relevant to the FAC one of these CBAs governed the terms and conditions of Plaintiff's employment.  *See Aguilera.*, 223 F.3d at 1015.

27. Plaintiff's failure to mention his union membership and the applicable CBAs does not change the fact that his claims exist solely because of, or require interpretation of, the CBAs. *See, e.g., Young*, 830 F. 2d at 997 (noting that a court may "look beyond the face of complaint to determine whether" a claim is "in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction").

### C. Plaintiff's Claims Are Preempted By The LMRA

#### 1. Plaintiff's Minimum Wage Claim Is an Artfully Plead Overtime Claim which Is Preempted Because It Arises Solely from the CBAs

28. Plaintiff's First Cause of Action for alleged minimum wage violations is preempted by Section 301 because it arises under the CBAs.  Plaintiff alleges in the FAC that he and the individuals he seeks to represent were not paid "for all hours worked, including, but not limited to, all hours they were subject to the control of Defendants and/or suffered or permitted to work under the Labor Code and Wage Orders."  (Ex. 7, ¶ 23.)

29. However, when compared to Plaintiff's original Complaint, it is apparent that Plaintiff's minimum wage claim is a disguised overtime claim, as any hours worked outside of an employee's normally scheduled hours would be overtime hours.  The following is a comparison of Paragraph 11 in the Complaint to the same paragraph in the FAC:

| Complaint, Para. 11 (Ex. 2) (emphasis added) | FAC, Para. 11 (Ex. 7.) |
|---|---|
| Throughout Plaintiff's employment with Defendants, Defendants' timekeeping and/or payroll policies and practices resulted in Plaintiff and other non-exempt employees not being compensated for all hours actually worked. **Plaintiff and other non-exempt** | Throughout Plaintiff's employment with Defendants, Defendants' timekeeping and/or payroll policies and practices resulted in Plaintiff and other non-exempt employees not being compensated for all hours actually worked. Upon information and belief, |

| | |
|---|---|
| **employees regularly worked more than eight hours in a workday or 40 hours in a workweek**. Upon information and belief, Defendants required Plaintiff and other non-exempt employees to perform work before their scheduled shifts, after their scheduled shifts, and/or during off-the-clock meal breaks, failed to maintain accurate records of their compensable hours worked **including overtime hours,** and failed to compensate employees for this time . . . As a result, Plaintiff and other non-exempt employees were not compensated for all earned minimum **and overtime** wages. | Defendants required Plaintiff and other non-exempt employees to perform work before their scheduled shifts, after their scheduled shifts, and/or during off-the-clock meal breaks, failed to maintain accurate records of their compensable hours worked, and failed to compensate employees for this time. As a result, Plaintiff and other non-exempt employees were not compensated for all earned minimum wages. |

30.   Paragraph 11 is within the Factual Allegations section, incorporated into each of Plaintiff's causes of action in the Complaint and FAC. (Ex. 2, ¶ 11; Ex. 7, ¶ 11.)  Plaintiff "artfully" deleted the bolded language when he amended his Complaint, seeking to avoid preemption. But a plaintiff cannot avoid LMRA preemption by artfully pleading a claim for breach of a collective bargaining agreement as a state law claim. *See, e.g.*, *Young*, 830 F.2d at 997 (cannot avoid LMRA preemption through artful pleading); *Radcliffe*, 519 F. Supp. 3d at 748 (same).  And, though the FAC fails to mention the CBAs, the minimum wage claim is also a claim for breach of those agreements.

31.   As the allegations above make clear, Plaintiff seeks damages based on alleged unpaid overtime under Labor Code section 510 and the Wage Order applicable to Plaintiff and the other individuals he seeks to represent. (Ex. 7, ¶ 11.)  Plaintiff claims that he and other employees were forced to "work before their scheduled shifts, after their scheduled shifts, and/or during off-the-clock meal breaks." (*Id.*)  Aera's employees work either 8- or 12-hour shifts. (Ex. 13 at 17–18; Ex. 14 at 11; Ex. 15 at 18–19.) Some receive paid lunches. (Ex. 13 at 14; Ex. 15 at 15.)  Any work done before or after an 8- or 12-hour shift, or during an unpaid meal period on an 8- or 12-hour shift, necessarily would be daily overtime in excess of an employee's regularly scheduled shift and would be paid at the overtime rate, not at the minimum wage rate. (Ex. 13 at 8–9; Ex. 14 at 13; Ex. 15 at 8–9.)

32. California Labor Code section 514 ("Section 514") allows employers and employees to establish their own overtime schemes in lieu of Labor Code section 510 and the applicable Wage Order through a collective bargaining agreement, so long as that agreement provides for wages, hours of work, working conditions, and overtime premiums, and guarantees a regular rate that is at least 30 percent greater than the minimum wage. CAL. LAB. CODE § 514. As the California Court of Appeal has explained, Section 514 allows unions and employers to completely remove themselves from California's default overtime scheme:

> When there is a valid collective bargaining agreement, "[e]mployees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day,* but also the timing *within a given week.* The Legislature did not pick and choose which pieces of subparagraph (a) will apply or not apply. Instead, the Legislature made a categorical statement that 'the requirements of this section,' meaning this section *as a whole,* do not apply to employees with valid collective bargaining agreements."

*Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 111 (2014) (quoting *Wylie v. Foss Maritime Co.*, 2008 WL 4104304, *17 (N.D. Cal. Sept. 4, 2008)) (original emphasis).

33. The Ninth Circuit explained the impact of Section 514 on the LMRA preemption analysis in *Curtis*. There, the court held that if a collective bargaining agreement meets the requirements of Section 514, an employee's "**right to overtime exists solely as a result of the CBA, and therefore is preempted under [the LMRA under the first prong of the preemption analysis]**." *Curtis*, 913 F. 3d at 1154 (emphasis added).

34. For the reasons outlined in *Curtis*, Plaintiff's overtime claim, artfully pled as a minimum wage claim, is preempted because the CBAs meet all the requirements of Section 514.

- The 2015 CBA provides for wages. (Ex. 13 at 14–16 (Art. VII).) It establishes hours of work. (*Id.* at 13–14, 17–19, 54 (Art. VI, VIII, XXVII).) It sets working conditions. (*Id.* at 51 (Art. XXIII).) It provides for overtime premiums. (*Id.* at 8–13 (Art. V).) And the CBA guarantees a regular rate that is at least 30 percent above the relevant state minimum wage. *Compare id.* at 59–60 (regular rates of at least $29.35, $30.23, $31.14, and $32.23 in May 2015, 2016, 2017, and 2018, respectively) *with* CAL. LAB. CODE § 1182.12 (minimum wages of $9, $10, $10.50, and $11 in 2015, 2016, 2017, and 2018, respectively).

- The 2019 CBA provides for wages. (Ex. 14 at 10 (Art. 4).) It establishes hours of work. (*Id.* at 11–12 (Art. 5).) It sets working conditions. (*Id.* at 12–13 (Art. 16).) It provides for overtime premiums. (*Id.* at 13–14 (Art. 7).) And the CBA guarantees a regular rate that is at least 30 percent above the relevant state minimum wage. *Compare id.* at 49 (regular rates of at least $27.70, $28.67, and $29.82 in February 2019, 2020, and 2021, respectively) *with* CAL. LAB. CODE § 1182.12 (minimum wages of $12, $13, and $14 in 2019, 2020, and 2021, respectively).

- The 2022 CBA provides for wages. (Ex. 15 at 16–18 (Art. VII).) It establishes hours of work. (*Id.* at 14–15, 18–20, 59 (Art. VI, VIII, XXVII).) It sets working conditions. (*Id.* at 51 (Art. XXIII).) It provides for overtime premiums. (*Id.* at 8–14 (Art. V).) And the CBA guarantees a regular rate that is at least 30 percent above the relevant state minimum wage. *Compare id.* at 64–65 (regular rates of at least $36.81, $37.91, $39.05, and $40.42 in February 2022, 2023, 2024, and 2025, respectively) *with* CAL. LAB. CODE § 1182.12 (minimum wages of $15 in 2022) *and* Cal. Min. Wage Order MW-2024, https://www.dir.ca.gov/IWC/MW-2024.pdf (minimum wages of $15.50 and $16 in 2023 and 2024, respectively).

35. Plaintiff's and the other individuals' right to overtime under Wage Order 16 (applicable to the employees who work in certain "on-site occupations" in the construction, drilling, logging, and mining industries) is preempted for the same reason–Wage Order 16 contains the same exemption set forth in Section 514. 8 CAL. CODE. REG. § 11160(3)(H)(1).

36. If Plaintiff had expressly included a cause of action for alleged overtime violations in his FAC as he did in his initial complaint, Ex. 2 ¶¶ 28–31, the claim would clearly be preempted by the LMRA. *See, e.g.*, *Curtis*, 913 F.3d at 1153–54; *Gray v. Marathon Petroleum Logistics Servs., LLC*, 2021 WL 129144, at *4 n.7 (C.D. Cal. Jan. 12, 2021) (holding that plaintiff's overtime claim was preempted based on Section 514); *Travis Taylor v. NBC W., LLC*, 2020 WL 8268197, at *2 (C.D. Cal. Jan. 2, 2020) (same). Plaintiff omitted express reference to his overtime claim when he filed his FAC, likely in an attempt to avoid LMRA preemption. But a plaintiff cannot avoid LMRA preemption of overtime claims by artfully pleading them as minimum wage claims. *See, e.g.*,

*Radcliffe*, 519 F. Supp. 3d at 748 (cannot avoid LMRA preemption through artful pleading); *Paige*, 826 F.2d at 860–61 (same).

37. Any hours Plaintiff or the individuals he seeks to represent worked in excess of their regularly scheduled hours would be paid at the overtime rate. Plaintiff's minimum wage claim is thus really an overtime claim. But any overtime claim arises out of the CBAs, and is preempted for that reason as discussed above.

### 2. Alternately, Plaintiff's Minimum Wage Claim Is Preempted Because It Requires Interpretation of the CBAs

38. Furthermore, Plaintiff alleges that he and the individuals he seeks to represent were not paid for "all hours they were subject to the ***control*** of Defendants." (Ex. 7 at ¶ 23 (emphasis added).) Resolution of this claim will require an analysis of whether Plaintiff and the individuals he seeks to represent were under Aera's control. *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal.4th 833, 841 (2015) (articulating seven factors for courts to evaluate in determining whether an employee is subject to an employer's control when not working). This analysis, in turn, will require the Court to analyze and interpret multiple collective bargaining agreement provisions, including paragraphs 30, 33, and 211–14 of the 2015 and 2022 CBAs, which explain when employees are compensated for driving company vehicles, and paragraph 34 of the 2015 and 2022 CBAs, which explains when employees are compensated for picking up, cleaning, or returning tools and equipment. (Ex. 13 at 11, 47–48; Ex. 15 at 12, 52.) LMRA preemption applies in cases "requiring interpretation of a CBA." *Kobold*, 832 F.3d at 1032 (citing *Lueck*, 471 U.S. at 210–11.)

39. Finally, resolution of Plaintiff's minimum wage claim will require the Court to analyze the scope of certain CBA provisions and determine the extent to which payments under these provisions can be used to offset alleged underpayments. For example, paragraph 28 of the 2015 and 2022 CBAs states that "Employees sent home because, in management's opinion, they are not fit to work after having worked extended overtime, will be paid for their regular scheduled hours for the balance of that shift at their normal straight time wage rate." (Ex. 13 at 9; Ex. 15 at 10.) LMRA preemption applies when "'determining whether there are wages owed' will, at least arguably, 'require construing and applying' a portion of the CBA." *Davis v. Northeast Ctr. for*

*Youth & Families, Inc.*, 662 F. Supp. 3d 151, 156 (D. Mass. 2023) (quoting *Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012)).

          3.    <u>Plaintiff's Rest Period Claim Is Preempted Because It Requires Interpretation of the CBAs and the Documents Incorporated by Reference</u>

40.    Plaintiff's Second Cause of Action alleges that Aera was required to provide Plaintiff and the individuals he seeks to represent "with a rest period of at least 10 minutes for each four-hour period worked, or major fraction," but did not give them the opportunity to "take all legally compliant rest periods." (Ex. 7, ¶ 27.) Resolution of this claim will require interpretation of the scope and applicability of each CBA.

41.    First, each of the CBAs suggest that employees may be entitled to *more* rest periods than the minimum required by California law. (Ex. 13 at p. 51, ¶ 227; Ex. 14 at 25; Ex. 15 at p. 56, ¶ 227.) The 2015 and 2022 CBAs, for example, state that "employees will not be required to perform their duties in a manner to violate the published Operating Orders or to otherwise affect the standards of safety or accuracy required by the Company." (Ex. 13 at p. 51, ¶ 227; Ex. 15 at p. 56, ¶ 227.) Aera's "published Operating Orders" include its Environmental Health and Safety ("EHS") Manual. (La Frenz Decl., ¶ 9.) Section 1.3.2 of the EHS Manual states, in relevant part, that employees must "[a]dvise your supervisor if you are unfit for duty. (The supervisor will consult with Health Services.) Workers are not fit for duty and are not allowed to work when[:] Taking medication that could adversely affect performance. (Even proper or prescribed use of medication can adversely affect performance.)[,] Feeling tired, sick, or not alert, making you unable to work safely[, or] Impaired by alcohol or having illegal substances (drugs or medicine) in your system." (La Frenz Decl., ¶ 10.) This section of the EHS manual indicates that an employee *must* take a break whenever the employee feels tired, unalert, or unable to work safely, no matter how often that occurs.

42.    Adjudication of Plaintiff's rest period claim will require the Court to decide, in the first instance, whether the Operating Orders are incorporated into the 2015 and 2022 CBAs by reference (they are). The Court will then have to interpret the meaning of "[f]eeling tired, sick, or not alert, making you unable to work safely," and whether, under the CBA and shop practice, this feeling can be remedied by taking a paid rest break.

43. Similarly, Article 16 of the 2019 CBA states, in relevant part, that "[e]very employee is expected to satisfy himself that safe working conditions prevail before performing any services; if he is not so satisfied he should develop the matter immediately with his supervisor. Infractions of safety rules may be called to the attention of the Local Management by any employee or the Adjustment Committee." Ex. 14 at 25. The CBA does not define "safe working conditions." (*See generally* Ex. 14.) Nor does it define the "safety rules" mentioned in Article 16. (*Id.*) Adjudication of this claim will require interpretation of those terms, and likely further interpretation of the safety rules that are incorporated into the CBAs by reference.

### 4. Plaintiff's Wage Statement, Waiting Time, Unfair Competition, and PAGA Claims Are Preempted Because they Are Derivative of the Other Claims

44. Plaintiffs Third through Sixth Causes of Action—for alleged wage statement, waiting time, unfair competition, and PAGA violations—are derivative of his First and Second Causes of Action and are preempted for that reason. "PAGA claims depend on the derivative claims for violations of the California Labor Code." *Radcliff*, 519 F. Supp. 3d at 748 (construing *Curtis*, 913 F.3d at 1150 n.3). "To find otherwise would allow for [the] artful pleading of PAGA claims—premised on Labor Code violations—to circumvent congressional intent regarding collective bargaining agreements and preemption." *Id.* (quoting *Martinez v. Omni Hotels Mgmt. Corp.*, 2021 WL 196509, at *4 (S.D. Cal. Jan. 20, 2021).

45. As explained above, Plaintiff's First and Second Causes of Action are preempted by Section 301(a) of the LMRA. Accordingly, Plaintiff's derivative causes of action are preempted as well. *See, e.g., Hall*, 146 F. Supp. 3d at 1204 ("Finally, the fifth cause of action, which seeks civil penalties under Labor Code § 2699.3(a), pleads that plaintiffs are entitled to recover civil penalties due to the statutory violations alleged in the first three causes of action. Consequently, this claim is derivative of those claims, and is preempted for the same reasons they are preempted."); *see generally Sanders v. Old Dominion Freight Line, Inc.*, 2018 U.S. Dist. LEXIS 226355, No. EDCV 18-688 DSF (SHKx) at *11 (C.D. Cal., June 25, 2018) (stating "Plaintiffs' PAGA claim rises or falls with their other claims . . . .").

### 5. Plaintiff's Timely Wage Payment Claim Is Preempted Because It Arises Solely from the CBAs

46. Plaintiff's Sixth Cause of Action for PAGA violations is also preempted for an independent reason: it alleges, among other things, that Aera violated California Labor Code section 204 by not paying Plaintiff and the individuals he seeks to represent "all earned wages at least twice during each calendar month in violation of Labor Code § 204." (Ex. 7, ¶ 45(e).) This claim, like Plaintiff's minimum wage claim, arises solely out of the CBAs and is therefore preempted.

47. As the Central District of California has explained, "the default rules established by § 204 do not, by the statute's own terms, apply to an employee who is subject to a qualifying CBA." *Landy v. Pettigrew Crewing, Inc.*, 2019 WL 6245525, at *4 (C.D. Cal. Nov. 22, 2019). This is because "[t]he language of § 204(c) makes clear that employers need not comply with § 204's timing requirements if a collective bargaining agreement creates a different payment arrangement." *Id*.

48. Here, Article 4 of the 2019 CBA specifies when employees will be paid. (Ex. 14 at 10.) Under Article 4, payments are made "biweekly, with adjustments made every subsequent payday." *Id.* When "a governing CBA provides for pay arrangements that differ from the statutory default and meets the requirements of a statutory exemption, that particular labor right exists solely as a result of the CBA." *Bartlett v. All Am. Asphalt*, 2020 WL 6118818, at *7 (C.D. Cal. Oct. 16, 2020). When, as here, "the Section 204 claims involve rights conferred by the CBA, they are therefore preempted at step one of the preemption analysis, and the Court need not address the second step (whether they required interpretation of the CBA)." *Id.*; *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1202 (C.D. Cal. 2015) (same).

49. The 2019 CBA establishes a schedule for the payment of wages. (Ex. 14 at 10.) Plaintiff's Sixth Cause of Action for alleged PAGA violations is therefore preempted to the extent it is predicated on alleged violations of Labor Code section 204. PAGA claims are derivative of, and rise and fall with, the underlying alleged Labor Code violations. *Curtis*, 913 F.3d at 1150 n.3; *Radcliff*, 519 F. Supp. 3d at 748.

### III. AERA'S REMOVAL IS TIMELY

50. Aera filed this removal within 30 days of being served with the Summons and a pleading in the State Court Action, as required by 28 U.S.C. § 1446(b).  Aera received a copy of the Summons and FAC on July 10, 2024, and this was the first time Aera had received a Summons or pleading in the State Court Action (the Complaint was not served on Aera).  (Exs. 8–9.)  This Notice of Removal is being filed within 30 days of receipt of the Summons and FAC and is therefore timely. 28 U.S.C. § 1446(b).

51. There are no named and served Defendants besides Aera.  Aera is informed and believes, and therefore alleges, that no "Doe" defendants have been served with a Summons or pleading in the State Court Action.  Jordan Decl., ¶ 12.  Aera may thus remove this action to federal court pursuant to 28 U.S.C. § 1441.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (noting that the rule requiring that all defendants join in removal applies "only to defendants properly joined and served" and that "a party not served need not be joined").

52. A copy of the Notice of Removal will be filed with the Superior Court.

### IV. VENUE

53. Plaintiff originally filed this action in the Superior Court of California, County of Kern.  Venue is proper in this district because it encompasses the county in which this action is pending.  28 U.S.C. § 1441(a).

### V. DEFENSES

54. The removal of this action to the Eastern District of California does not waive Aera's ability to assert any defenses to this action.

### VI. CONCLUSION

55. Because the Court has original jurisdiction of this Action pursuant to 28 U.S.C. § 1331, removal of this Action is proper pursuant to 28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over remaining state-law claims, if any, because they are part of the same case and controversy.

56. Based on the foregoing, Aera respectfully requests that the Court remove the above-entitled action to federal court.

| | |
|---|---|
| Dated: August 8, 2024 | RUTAN & TUCKER, LLP<br><br>By: _____<br>Hope Anne Case<br>Kenneth J. Zielinski<br>K. Bartlett Jordan<br>Attorneys for Defendant<br>AERA ENERGY SERVICES COMPANY |