UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RADFORD, an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AERA ENERGY SERVICES COMPANY, a Delaware Corporation, and DOES 1 through 50,<br><br>Defendants. | No. 1:24-CV-00921-KES-CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Docs. 25, 29 |

Plaintiff Christopher Radford ("Radford"), on behalf of himself and all others similarly situated, moves to remand this action to Kern County Superior Court. Doc. 29 ("MTR"). Separately, defendants Aera Energy Services Company ("Aera") and DOES 1 through 50, inclusive, move for judgment on the pleadings. Doc. 25 ("MJP"). The parties filed oppositions and replies to both motions. Docs. 30, 31, 34, 36. The Court held oral argument on February 10, 2025. Doc. 37. For the reasons set forth below, Radford's motion to remand is granted and Aera's motion for judgment on the pleadings is denied as moot.

1

## I. Background

On April 16, 2024, Radford brought this civil class action against Aera in Kern County Superior Court, alleging that Radford and other non-exempt employees suffered violations of several provisions of the California Labor Code and applicable Industrial Welfare Commission Wage Orders during their employment with Aera. Doc. 2-2. On July 8, 2024, Radford filed a first amended class action complaint, Doc. 2-7 ("FAC"), alleging claims for (1) minimum wage violations, (2) rest period violations, (3) wage statement penalties, (4) waiting time penalties, (5) unfair competition, and (6) civil penalties under the Private Attorneys General Act ("PAGA"). FAC at 1. Radford seeks recovery for unpaid wages, statutory penalties, injunctive relief, declaratory relief, and restitution. *Id.* ¶ 1.

Aera removed the action to this Court on August 8, 2024. Doc. 1 ("Notice of Removal"). In its Notice of Removal, Aera asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Radford's action arises under federal law. *Id.* at 6. Aera alleges that, while Radford does not explicitly plead any federal claims, the state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* Aera also contends that if some, but not all, of the state law claims were found to be preempted, this Court has supplemental jurisdiction over any remaining state law claims as they are part of the same case and controversy. *Id.* at 8. In his motion to remand, filed November 27, 2024, Radford argues that his claims arise solely under state law because they are not preempted by § 301, and that the Court lacks subject matter jurisdiction as there is no federal question presented. *Id.*

In its motion for judgment on the pleadings, filed November 26, 2024, Aera asserts several theories as to why Radford's preempted claims must be dismissed, including that the FAC fails to sufficiently state cognizable claims and that Radford failed to exhaust required grievance procedures under various collective bargaining agreements ("CBAs"). MJP at 9–10.[1]

---

[1] In support of their motion for judgment on the pleadings, Aera requests that the Court take judicial notice of the following: (1) the 2015, 2019, and 2022 CBAs between Aera and various labor unions, (2) excerpts from Aera's Environmental Health and Safety Manual ("EHS Manual"), and (3) Aera's Working Time Policy ("WTP"). Docs. 27, 36. Radford does not oppose the request for judicial notice. Under Federal Rule of Evidence 201, the court may take judicial notice of facts that are either "generally known within the trial court's territorial

2

## II.  Legal Standard

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Section 1447(c) "is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Acad. Of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021) (quoting *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.") (internal citations omitted). As such, a federal court must reject jurisdiction and remand the case to state court if there is any doubt as to the right of removal. *Matheson*, 319 F.3d at 1090.

Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A corollary to the well-pleaded complaint rule is the

---

jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court grants Aera's request. Courts routinely take judicial notice of governing CBAs where necessary to resolve issues of preemption and when the documents are not subject to reasonable dispute. *See Garza v. WinCo Holding, Inc.*, No. 1:20-cv-01354-JLT-HBK, 2022 WL 902782, at *3 (E.D. Cal. Mar. 28, 2022) (citing cases); *Johnson v. Sky Chefs, Inc.*, No. 11-cv-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012). Accordingly, the CBAs are appropriate for judicial notice.

While Radford disputes that the EHS Manual and WTP are incorporated by reference into the CBAs, he does not contest their authenticity. As there is no dispute as to the authenticity of the EHS Manual or WTP, the Court takes judicial notice of them for purposes of considering the preemption issue. *See Hall v. Live Nation Worldwide Inc.*, 146 F. Supp. 3d 1187, 1192 (C.D. Cal. 2015) ("[The] court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims.") (internal citations omitted).

3

'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 393). In cases of "complete preemption," a federal court has jurisdiction over such preempted claims even though they do not explicitly plead a federal question.

**III.    Discussion**

    **A.    Preemption under § 301 of the LMRA**

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). While § 301 contains no express language of preemption, courts have interpreted the provision to "create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."). As the Ninth Circuit clarified in *Curtis*, "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to federal court." *Curtis*, 913 F.3d at 1152.

At the same time, the preemptive force of § 301 is not limitless. "[T]he Supreme Court has stressed that '[§] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). "If a claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). Preemption must be based on more than a "hypothetical connection between the claim and terms of the CBA" and courts must have to do more than simply consult the CBA to consider a plaintiff's claim. *Id.* at 691–92.

In order to determine § 301 preemption, the Ninth Circuit employs a two-step test. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the court must

consider "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Curtis*, 913 F.3d at 1152 (quoting *Burnside*, 491 F.3d at 1059). The "essential inquiry" considers whether a claim seeks "purely to vindicate a right or duty created by the CBA itself." *Curtis*, 913 F.3d at 1152 (internal citations omitted). If so, "then the claim is preempted, and [the] analysis ends there." *Id.* at 1153 (quoting *Burnside*, 491 F.3d at 1059). If not, the court proceeds to the second step and considers "whether [the right] is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (internal citations omitted). A right is substantially dependent on analysis of a CBA if it requires *interpreting* a CBA, necessarily involving an "active dispute" over the meaning of the contract terms. *Curtis*, 913 F.3d at 1153. However, a "state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Id.*

### 1. Minimum Wage Claim

Radford's first claim alleges that Aera required him to perform work, without compensation, before and after his scheduled shifts and during off-the-clock meal breaks. FAC ¶ 11. As a result, Radford claims Aera violated California Labor Code § 1194 (and applicable wage orders) by failing to pay Radford for all hours worked where subject to Aera's control. MTR at 7; FAC ¶ 23.

Under step one of the *Burnside* analysis, the Court considers if the minimum wage claim solely arises under the CBAs. Section 1194 of the California Labor Code states that, "any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . . compensation." Section 1194 "has no exemption for CBAs." *Avila v. Kiewit Corp.*, No. 2:19-cv-1295-SK, 2021 WL 4732575, at *3 (C.D. Cal. June 17, 2021); *see Curtis*, 913 F.3d at 1152 ("Setting minimum wages . . . remains well within the traditional police power of the states, and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA."); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985) ("[The LMRA] does not grant parties to a [CBA] the ability to contract for what is illegal under state law."). Accordingly, Radford can bring his minimum wage claim under state law, and the claim does not arise under

5

the CBAs.

Aera argues that Radford's complaint does not seek minimum wages but rather states an "artfully pled overtime claim."[2] Doc. 31 at 14. Aera argues that Radford is necessarily seeking overtime compensation by seeking wages "outside of the regular schedule," which under the operative CBAs are explicitly defined as overtime hours. *Id.* at 15. Further, Aera contends that, California Labor Code § 514, which addresses overtime wages, exempts the CBAs at issue.[3] *Id.* As such, Aera argues Radford's "right to overtime exists solely as a result of the CBA and is therefore preempted." *Id.* at 13 (citing *Curtis*, 913 F.3d at 1154).

Aera's argument is unavailing. Radford's complaint asserts a claim for minimum wages and does not seek overtime wages. Radford further confirmed in his motion to remand that "minimum wages claim does *not* seek unpaid overtime wages," MTR at 5 (emphasis in original), and reaffirmed this point at oral argument. Radford seeks to be compensated at the minimum wage rate for all hours when he and similarly situated employees were under Aera's control. Regardless of whether "off-the-clock" hours worked would theoretically be *eligible* for overtime compensation, Radford seeks only *minimum wage* compensation, a claim which can be exclusively addressed under state law. *Compare Avila*, 2021 WL 4732575, at *3 (finding no preemption of minimum wages claim for time spent waiting to clock in and out of work); *Jimenez v. Young's Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082, at *9 (N.D. Cal. Dec. 20, 2021) (finding no preemption where plaintiff sought off-the-clock minimum wage compensation

---

[2] Aera points to Radford's initial complaint, which specifically sought overtime wages, as evidence of Radford's attempt to avoid § 301 preemption while still seeking overtime wages. Doc. 25 at 19. Radford's initial complaint is irrelevant to the preemption analysis. The Court considers only the claims asserted in the operative complaint, in this case the FAC. *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("It is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.").

[3] "Sections 510 and 511 of the California Labor Code do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Because the Court finds that Radford seeks relief under § 1194, not §§ 510–11, the Court need not address whether the applicable CBAs would satisfy the exemption requirements of § 514.

for work during non-scheduled hours); *and Alexander v. Republic Servs., Inc.*, No. 2:17-0644 WBS AC, 2017 WL 2189770, at *3 (E.D. Cal. May 18, 2017) (finding no preemption of off-the-clock minimum wage claim regardless of CBA's reference to schedule and work hours); *with Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034–35 (9th Cir. 2016) (finding preemption where the plaintiff requested "time-and-a-half-pay for certain 'extra' shifts").

Under step two of the *Burnside* analysis, there is no need to interpret the CBAs to address Radford's minimum wages claim. Aera points to Radford's allegations that Aera's "policies and practices" resulted in his under-compensation. FAC ¶ 11. Therefore, Aera argues, resolving Radford's claim "requires an understanding of exactly what those policies are, and what is—and is not—compensable time under those policies, including the CBAs." Doc. 31 at 19. However, it is not necessary to consult Aera's policies and practices, or the CBAs, to determine when Radford was under Aera's control and if Radford was paid for such time. "To succeed on his claim under state law for failure to pay minimum wages, [Radford] must prove that (1) he performed work and (2) he was paid less than the minimum wage. He must also prove (3) the [amount of] unpaid wages [owed]." *Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-cv-07874-LB, 2022 WL 3641010, at *5 (N.D. Cal. Aug. 23, 2022) (citing Cal. Labor Code §§ 1194(a), 1197; Judicial Council of California Civil Jury Instructions (2022), CACI No. 2701).

California defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. tit. 8 § 11160(2)(J). California state courts have interpreted "subject to the control of an employer" to mean "[w]hen an employer directs, commands or restrains an employee." *Bono Enters., Inc. v. Bradshaw*, 38 Cal. Rptr. 2d 549, 553–54 (Cal. Ct. App. 1995). Such factors can be considered independent of company policies. *See Cramer*, 255 F.3d at 690 ("Even [though] dispute resolution pursuant to [the CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts . . . the state-law claim can be resolved without interpreting the agreement itself."); *Burnside*, 491 F.3d at 1073 (finding irrelevant "whether a grievance [under a CBA] arising from 'precisely the same facts' could be pursued."). Finally, referencing terms in the CBAs to calculate damages does not

7

require the level of interpretation necessary for preemption. *Livadas*, 512 U.S. at 125. Accordingly, Radford's minimum wage claim is not preempted by § 301 of the LMRA.

### 2. Rest Period Claim

Radford next alleges that Aera failed to pay Radford for rest periods, in violation of California Labor Code § 226.7 and applicable wage orders. FAC ¶ 27. Under California Wage Order 16, Aera must provide a "rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof."[4] Cal. Code Regs. tit. 8 § 11160(11). However, unlike § 1194 governing minimum wage claims, "[Wage Order 16's rest period provisions] shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides *equivalent protection*." *Id.* (emphasis added).

The Court first considers if the CBAs provide for such equivalent protection. If so, under *Burnside* step one, the rest period claim would arise solely under the CBA and would be preempted. Aera argues that two of the operative CBAs during Radford's employment, the 2015 and 2022 CBAs, provide such equivalent protection and therefore render Wage Order 16 inapplicable.

Aera relies on Article 23 of the 2015 and 2022 CBAs, which states that "employees will not be required to perform their duties in a manner to violate the published Operating Orders or to otherwise affect the standards of safety or accuracy required by the Company." Docs. 3-1 at 51, 3-3 at 56. Aera attaches a declaration by its Vice President of Compensation and Benefits asserting that its "Operating Orders" includes two Aera policy documents: its Working Time Policy ("WTP") and its Environmental Health and Safety Manual ("EHS Manual"). Doc. 25-1 ("Watts Decl.") ¶ 9. The WTP expressly provides for the equivalent protection found in Wage

---

[4] California's Industrial Welfare Commission (IWC) prescribes rules and regulations governing wages, hours, and working conditions through a series of 18 wage orders. *Lujano v. Piedmont Airlines, Inc.*, 734 F. Supp. 3d 988, 995 (C.D. Cal. 2024). Wage Order 16 applies to "on-site occupations in the construction, drilling, logging and mining industries," including "all persons employed . . . [in] work required to drill, establish, repair, and rework wells for the exploration or extraction of oil, gas, or water resources. Cal. Code Regs. tit. 8 § 11160. Both parties agree that Wage Order 16 is the relevant Wage Order in this case. MJP at 9; Doc. 30 at 9.

8

Order 16.[5] *Id.* at 340. Therefore, the Court must decide if the CBAs' general reference to "Operating Orders" incorporates the WTP even though neither CBA references the WTP.

In *Pearson v. Northwest Airlines, Inc.*, the Court applied the following factors in deciding whether a CBA incorporated a company policy: "(1) whether the CBA set forth material amendments to or elements of the [policy]; (2) whether the [policy] referenced the CBA; and (3) whether evidence showed the parties to the CBA had bargained for the [policy]." 659 F. Supp. 2d 1084, 1091 (C.D. Cal. 2009) (citing *Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent & Clerical Employees*, 187 F.3d 970, 973 (8th Cir. 1999)). Importantly, "'mere mentioning' of the [policy] in the CBA does not constitute incorporation by reference." *Id.* (citing *Jenisio*, 187 F.3d at 973). This Court finds the reasoning in *Pearson* persuasive as it focuses on whether the policy or its terms were part of the parties' negotiated agreement as reflected in the CBA.[6]

Aera has not met its burden to show that the WTP is part of the parties' negotiated CBAs. For one, "Operating Orders" is not defined anywhere in the CBAs or in any contemporaneous company documents found in the record. While Aera's declaration attests that the WTP is one of its "Operating Orders," this declaration alone does not satisfy Aera's burden as the removing party. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003) (affirming preponderance of the evidence standard for removing party). The CBAs do not reference the WTP or set forth any of its provisions, and Aera offers no evidence to suggest that the parties bargained for the WTP's provisions to be in the CBAs.

Aera cites several cases finding that a CBA incorporated external documents by reference. *See Boldt v. N. States Power Co.*, 904 F.3d 586, 592 (8th Cir. 2018) (holding that a "fitness-for-duty policy" was incorporated by reference because it necessarily had to be consulted to consider the plaintiff's discrimination claim); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1211 (10th Cir.

---

[5] Aera does not argue that the EHS Manual provides such equivalent protection.

[6] *See Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 913–14 (9th Cir. 2018) ("[Section 301 preemption] extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes.").

2001) (finding that external policy documents referencing the CBA were intended to be read in harmony with the CBA); *Stuart v. City of Framingham*, No. 1:16-cv-12559-IT, 2020 WL 360552, at *9 (D. Mass. Jan. 22, 2020) (incorporating employment policy into CBA where policy required that its authority be carried out "in accordance with all . . . collective bargaining agreements"), *aff'd sub nom. Stuart v. City of Framingham, Massachusetts*, 989 F.3d 29 (1st Cir. 2021). However, in these cases, the policy and CBA were much more explicitly linked. In *Garley* and *Stuart*, the CBAs referenced the policies by name, and the policies explicitly stated that they applied to the CBAs. *Garley*, F.3d at 1211; *Stuart*, 2020 WL 360552, at *9. In *Boldt*, the CBA specifically required its employees to "abide by *all* Company safety regulations [and] policies." *Boldt*, 904 F.3d at 592 (emphasis added). In contrast, here the CBAs make no reference to the WTP and make only a general reference to "Operating Orders," which they do not define.

Additionally, the WTP includes only a brief general reference to CBAs. The WTP's only mention of CBAs is in a footnote stating: "For employees covered by the USW or WCEU collective bargaining agreements, where there is a conflict between this Policy and the collective bargaining agreement, the collective bargaining agreement will govern." Watts Decl. at 338, n.1. This footnote does not establish that the CBAs' general reference to "Operating Orders," without any further definition or clarification, incorporated the WTP, or that "material elements" of the WTP were addressed in the CBA such that they were a "subject of collectively-bargained agreement." *Pearson*, 659 F. Supp. 2d at 1092. To find otherwise would undermine *Caterpillar's* instruction that "Section 301 governs claims founded directly on rights *created* by collective-bargaining agreements." *Caterpillar*, 482 U.S. at 394 (emphasis added) (internal citations omitted). Therefore, the CBA's reference to "Operating Orders" does not incorporate the WTP and Radford's rest period claim does not solely arise under the CBA.[7]

---

[7] The EHS Manual is also not incorporated by reference into the CBA. In addition to a lack of any contemporaneous definition of "Operating Orders" that would include the EHS Manual, the EHS Manual itself does not mention the CBAs at all. *See generally* Watts Decl., Ex. 4. In the alternative, Aera argues that the general reference to "safety rules" in the 2019 CBA incorporates the EHS Manual. Watts Decl. ¶ 13. However, the reference to "safety rules" does not set forth any element of the EHS Manual, and Aera offers no evidence to suggest that the parties' bargain included incorporating the EHS Manual within such undefined "safety rules."

1    The inquiry does not end there. Under step two of the *Burnside* analysis, the Court must consider if adjudicating Radford's rest period claim would require interpretation of any "actively disputed" terms in the CBA. *Curtis*, 913 F.3d at 1153.

Aera argues that the 2015 and 2022 CBAs' instruction that "employees will not be required to perform their duties in a manner to . . . affect the *standards of safety* or *accuracy* required by the Company", and the 2019 CBA's reference to "safe working conditions" and "safety rules," are sufficiently ambiguous to require interpretation.[8] Doc. 31 at 23–24 (emphasis added). This argument is unpersuasive. Aera's argument would turn any general reference to "safety rules" in the CBAs into a purported basis to invoke § 301 preemption. As stated in *Cramer*, "[a] creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility." *Cramer*, 255 F.3d at 692. Aera's citation to *Rodriguez v. Gonzalves & Santucci, Inc.* is inapposite. There, the CBA specifically "define[d] how rest periods [would be] paid." No. 21-cv-07874-LB, at *4, 2022 WL 161892 (N.D. Cal. Jan. 18, 2022). Here, the link between the CBAs' limited references to undefined "safety rules" and Radford's statutory right to rest periods is significantly more attenuated. Like Radford's minimum wage claim, there are no "actively disputed" terms in the CBAs that would require interpretation to address whether Aera complied with Wage Order 16's mandate to provide ten minutes of paid rest for every four hours worked. Accordingly, Radford's rest period claim is not preempted under § 301.

### 3. Wage Statement Violations, Waiting Time Penalties, Unfair Competition, and PAGA Claims

Both parties agree that Radford's remaining claims are derivative of his minimum wage and rest period claims. Docs. 29 at 11, 31 at 26; *Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal. Nov. 8, 2019) ("PAGA claims are derivative of the predicate

---

[8] The 2019 CBA's relevant section states: "Every employee is expected to satisfy himself that safe working conditions prevail before performing any services; if he is not so satisfied he should develop the matter immediately with his supervisor. Infractions of safety rules may be called to the attention of the Local Management by any employee or by the Adjustment Committee." Doc. 3-2 at 25.

1  California Labor Code violations, and therefore rise and fall with those underlying claims.");

2  *Blackwell v. Com. Refrigeration Specialists, Inc.*, No. 2:20-cv-1968-KJM-CKD, 2021 WL

3  2634501, at *4 (E.D. Cal. June 25, 2021) (finding plaintiff's PAGA claims are derivative of the

4  underlying claims).  Therefore, as Radford's first two claims are not preempted by § 301, the

5  remainder of his claims are similarly not preempted.[9]

### IV.     Conclusion and Order

Aera removed this action based on federal question jurisdiction.  As Radford's claims all arise under state law and none of them are preempted, there is no federal question presented and the Court lacks subject matter jurisdiction to hear this case.

Accordingly, the Court ORDERS:

1. Radford's motion to remand, Doc. 29, is GRANTED;
2. Aera's motion for judgment on the pleadings, Doc. 25, is DENIED as moot;
3. This action is REMANDED to Kern County Superior Court for lack of subject matter jurisdiction;
4. The Clerk of Court shall mail a copy of this order to the clerk of Kern County Superior Court; and
5. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   April 9, 2025

UNITED STATES DISTRICT JUDGE

---

[9] If Radford's PAGA claim alleged a timely wages violation under California Labor Code § 204, this claim would not be derivative of the first two claims and would be preempted by § 301 of the LMRA.  "[W]hen employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees."  Cal. Lab. Code § 204.  However, Radford does not assert such a PAGA claim.  Section 204 "deals solely with the timing of wages and not whether these wages were paid."  *Hadjavi v. CVS Pharmacy*, No. CV 10-04886 SJO, 2010 WL 7695383, at *2 (C.D. Cal. Sept. 22, 2010).  Radford does not allege that Aera failed to pay him on schedule twice a month; rather, he alleges that he was not paid "all earned wages" when he was paid twice a month.  FAC ¶ 45.  Therefore, this claim is also derivative of Radford's minimum wage violation claim.